Clifford S Davidson, OSB No. 125378
csdavidson@swlaw.com
Lea K. Schneider, OSB No. 145154
lschneider@swlaw.com
SNELL & WILMER L.L.P.
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
Telephone: 503.624.6800
Facsimile: 503.624.6888
Attorneys for Plaintiff Linda Woodley

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| LINDA WOODLEY, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF PORTLAND, a municipal corporation,<br><br>Defendants. | Case No. 3:22-cv-00423-SI<br><br>FIRST AMENDED COMPLAINT<br><br>42 U.S.C. § 1983<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Linda Woodley is 72. Decades ago, she did time in federal prison in connection with allegations of bankruptcy fraud and tax fraud, related to a company of which she was majority shareholder. The IRS and state taxing authorities at various points have filed liens associated with those mistakes long ago. She has never concealed these facts, and Woodley has resolved, or is resolving, all of these liens. Nevertheless, because the *Oregonian* published an article overblowing the 1997 conviction and tax liens, the City revoked approximately $11.5 million in contracts that the City had awarded to Woodley's company through the Portland Clean Energy Community Benefits Fund.

Ironically, that fund is designed to bolster ecological resiliency in Portland's communities

Page 1 – FIRST AMENDED COMPLAINT

of color—communities whose members disproportionately are accused and convicted of crimes, and that lose future opportunities as a result. That is the precise harm that the City inflicted on Woodley. Rather than provide her an adequate opportunity to clear her name when the *Oregonian* article came out, the City gave her approximately 41 hours to respond to numerous questions about references Woodley had not provided and people she'd never heard of.[1] And, when she (understandably) could not within that allotted time explain why people she didn't know had never heard of her (because PCEF hadn't contacted the right people), Does 1 through 9, certain members of the PCEF Committee, informed the City Council that it should revoke the contracts and, through defendant Rubio and others, made multiple false statements impugning Woodley's character. The City Council did in fact revoke the contracts, thus appearing to the public to ratify the *Oregonian's* findings—further harming Woodley. Indeed, the *Oregonian* published additional articles reporting on the City's revocation of the contracts—widely disseminating the City's apparent ratification of the earlier article's allegations.

Woodley's career has been destroyed several years before her retirement. She cannot practice her chosen profession. She seeks recompense.

## JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiff's claims arise under the Federal Constitution. This Court has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367(a).

2. This Court has personal jurisdiction over the City of Portland, as it is a municipal corporation located in this district.

3. Venue lies in this Court, as the acts or omissions occurred within this district.

4. Portland is the appropriate divisional venue, as the acts or omissions alleged in this complaint occurred in Multnomah County.

---

[1] Tellingly, the Portland Clean Energy Community Benefits Fund since has changed its procedures to give applicants six business days to respond to requests for additional information.

## PARTIES

5. Plaintiff Linda Woodley is the Executive Director of a nonprofit corporation called Diversifying Energy ("DE"). Woodley founded DE in July 2020. DE's mission is to facilitate equitable access to clean, sustainable energy and improve air quality to vulnerable populations, including low-income communities and people of color. Woodley, who is 72 years old, has worked in the fields of energy, diversity, and equity and inclusion, for her entire adult life. Plaintiff resides in Clackamas County and is an Oregon citizen.

6. Defendant City of Portland (the "City") is a municipal corporation. It is a state actor for purposes of 42 U.S.C. § 1983. The City, through its Bureau of Planning and Sustainability, administers the Portland Clean Energy Community Benefits Fund ("PCEF"). As described below, this lawsuit arises from actions that PCEF has taken, and statements that Commissioner Carmen Rubio made, in connection with Woodley and DE.

## FACTS COMMON TO ALL CLAIMS

**A.    The Portland Clean Energy Community Benefits Initiative and the creation of PCEF.**

7. On November 6, 2018, Portland voters adopted Ballot Measure 26-201, the Portland Clean Energy Community Benefits Initiative. That initiative created a clean energy surcharge intended to fund clean energy projects and job training.

8. In February 2019, the City created the PCEF as part of implementing the initiative.

9. PCEF describes its purpose as follows:

> The Portland Clean Energy Community Benefits Fund (PCEF) provides dedicated funding for climate action that advances racial and social justice. PCEF was created by local ballot measure #26-201 in November 2018 with overwhelming community support.

> In the face of climate change, racial injustice, economic insecurity, and COVID-19, PCEF offers a community-led vision, grounded in justice and equity, that builds citywide resilience and opportunity.
>
> The Fund is anticipated to bring $44 - $61 million in new annual revenue for green jobs, healthy homes, and a climate-friendly Portland. As the nation's first-ever climate-fund created and led by communities of color, PCEF is for and by the community. PCEF centers Black and Indigenous people, and other disadvantaged and marginalized groups in addressing the climate crisis.

*Available at* https://www.portland.gov/bps/cleanenergy/about (accessed March 12, 2022).

**B.    Woodley learns of a grant that PCEF planned to award without a competitive process. When Woodley expresses interest in applying, PCEF issues an RFP. Woodley and her organization respond fully and honestly to the RFP.**

10.    In late September 2021, Plaintiff learned that PCEF planned to award a major grant to a nonprofit to act as Equipment Purchasing Partner ("EPP") in connection with an effort to distribute cooling equipment to low-income Portlanders. PCEF undertook that effort in response to the unprecedented, fatal heat dome weather event that struck the Portland area in the summer of 2021.

11.    When Woodley learned of the EPP grant, she contacted PCEF to express DE's interest in applying for the grant. Woodley is informed and believes, and on that basis alleges, that at the time she contacted PCEF, it anticipated awarding the grant to Earth Advantage without a competitive process.

12.    Because there were now multiple potential grantees, PCEF issued on October 13, 2021, a Request for Proposal (the "RFP"). The RFP is attached as Exhibit 1.

13. The response to the RFP was due on October 27, 2021—two weeks after the RFP's issuance. In Plaintiff's experience, two weeks is a very short timeframe. Plaintiff believes that PCEF provided a short timeframe for responses because PCEF still intended to award the EPP grant to Earth Advantage.

14. DE was able to respond to the RFP on such short notice because it already was working on a similar proposal in anticipation of a round two PCEF grant.

15. The RFP did not ask for personal references. Rather, the RFP requested the following information about "each of the key team members who will perform work on this project":

    a. their role(s) and responsibilities on this project

    b. experience on similar or related projects and/or transferrable skills

    c. unique qualifications that will contribute to project success (e.g., personal and/or life experience, professional development, education, or other qualifications relevant to the project)

    d. bio or resume[.]

16. On October 27, 2021, Woodley, on behalf of DE, submitted DE's response to the RFP. DE's response included all information that the RFP requested, including information about her own experience. The response included five other "key team members," in addition to Woodley.

17. In response to the question about her "experience on similar or related projects and/or transferrable skills," Woodley listed five projects—some of which were recent and therefore easily verified, and others that were older.

18. On November 5, 2021, Woodley, on behalf of DE, submitted a revised response to the RFP. The revised response accounted for changes to the budget and other aspects of the project. The revised response also included all the information that the RFP requested, including

information about Woodley's experience, as well as the five other key team members.

19. In both responses, Woodley and DE were fully truthful.

20. On November 10, 2021, the PCEF Committee recommended to the City Council that it award the EPP grant to DE.

21. On December 1, 2021, the City Council awarded the EPP grant to DE. The EPP grant was to be in the amount of $11.5 million.

**C.   PCEF demands that Woodley provide personal references.**

22. Woodley is informed and believes, and on the basis of such information and belief alleges, that in or about early December 2021, the *Oregonian* began asking City personnel about Woodley as part of an article it was writing.

23. On Thursday, December 9, 2021 at 8:30 p.m., without warning, PCEF requested that Woodley provide personal references regarding three of the projects listed as "experience on similar or related projects and/or transferrable skills."

> In the meantime, I need to get references (name, email, phone number) of a lead staff member that can speak to your performance for each of the following similar projects listed in your proposal. Can you send this over ASAP?
>
> - HVAC equipment acquisition, warehousing and distribution for a Pacific Gas & Electric (PG&E) direct install program in Northern California
> - HVAC equipment acquisition and distribution program for Fortis BC (Terasen Gas) in Vancouver, BC
> - Launch of a San Jose Clean Energy program which targets disadvantaged communities. In this program, Linda will be responsible for the acquisition and distribution of refrigerators, washers and dryers, dishwashers, and smart thermostats.

PCEF wanted the information "ASAP" and, in any event, not later than noon on December 13, 2021.

24. On December 10, 2021, at 5:43 a.m., Woodley provided PCEF with references for the San Jose Clean Energy program and Fortis BC. She also provided details of a Pacific Gas & Electric (PG&E) project, including (a) a copy of the contract that contained the scope of work on that project, and (b) references for the subcontractors.

25. On December 10, 2021, at 9:41 a.m., PCEF requested references for the Energy Upgrade California program, PG&E project, and Portland General Electric Affordable Housing

Project.

26. On December 10, 2021, at 1:20 p.m., Woodley provided PCEF a copy of the PG&E contract, including the contract number and contact information for the person who signed that contract, along with references for the subcontracts.

27. On Saturday, December 11, 2021, at 8:38 a.m., PCEF requested reference contacts pertaining to the Energy Upgrade California program.

28. On Sunday, December 12, 2021, at 10:01 p.m., PCEF requested information for two of the DE employees who would work on the project.

29. On December 12, 2021, at 10:14 p.m., Woodley requested an update from PCEF on the status of the reference checks.

30. On December 13, 2021, at 9:32 p.m., PCEF emailed Woodley stating that they had connected with the Energy Upgrade California, Portland General Electric and San Jose Clean Energy references. PCEF also stated that they had connected with someone named Alfred Gaspari, who was not one of the references Woodley listed. Unsurprisingly, Gaspari did not know Woodley.

31. On December 14, 2021, at 2:26 p.m., PCEF requested references for a DE employee named Jamal Cross, about whom Woodley already had provided information. The request indicated that PCEF incorrectly believed Cross reported to PG&E.

32. On December 14, 2021, at 2:37 p.m., Woodley responded that Cross in fact reported to her, not to PG&E. She further indicated that she could provide records reflecting the installations that Cross managed, and that she would need PG&E permission to release the information (it contained personal information about customers). At 2:53 p.m., Woodley sent the installation records to PG&E with customer information redacted.

33. On December 14, 2021, at 10:00 p.m., PCEF sent a letter requesting a reply by 5:00 p.m. on December 16, 2021 (the "10:00 p.m. Letter"). A copy of the 10:00 p.m. Letter is attached as <u>Exhibit 2</u>.

34. The 10:00 p.m. Letter demonstrated that PCEF still was speaking with the wrong

references. Thus, at 10:47 p.m., Woodley informed PCEF that it was using the wrong references and that one of the names in the letter was someone whom Woodley had not listed and did not know.

35. On December 16, 2021, in advance of the 5:00 p.m. deadline, Woodley provided the response PCEF had requested in the 10:00 p.m. Letter. She addressed each of the points raised in the 10:00 p.m. Letter, pertaining to both the references and Woodley's criminal history. She also invited PCEF to contact her if it had additional questions. PCEF did not do so. A copy of Woodley's response is attached as Exhibit 3.

36. On December 17, 2021, PCEF informed Woodley that it would withdraw its recommendation to the City Council that Woodley's company be awarded the EPP grant. Notwithstanding Woodley's detailed responses indicating that PCEF was, at best, confused, PCEF provided no further opportunity for Woodley to clear her name or that of her company.

37. Also on December 17, 2021, the City, through Commissioner Rubio, the Commissioner whose bureau oversees PCEF, issued a public statement falsely stating that the City had given "Woodley the opportunity to respond," and that "there remain concerning inconsistencies that call into question Diversifying Energy's ability to get lifesaving cooling units to vulnerable Portlanders." This statement was inaccurate; in fact, PCEF had given Woodley very little time to respond. It also appeared to disregard the information that Woodley provided in her December 17 response.

38. On January 5, 2022, the City Council revoked the grant award to Diversifying Energy and instead awarded the grant to Earth Advantage. In (literal) contrast to Diversifying Energy, public reports indicate that 85% of that company's staff are white.

39. Prior to issuing the EPP grant RFP, PCEF had awarded contracts to Diversifying Energy, including a grant in the amount of $198,000 for work on Portland Public Schools facilities. However, since the City Council revoked the EPP grant, PCEF has informed Diversifying Energy that it will no longer provide advance payments for this work as called for in the original grant agreement.

40. Since the City's revocation of the grant award and public statements about Woodley, PCEF has amended its policies in ways that confirm the lack of procedural due process afforded to Woodley. For example, it is now PCEF policy that grant applicants may have six days, as opposed to the 41 hours provided to Woodley, to respond to requests for information. Furthermore, PCEF has reiterated that it will not perform background checks; it had stated previously at public workshops that it would not perform them.

## FIRST CLAIM FOR RELIEF

(42 U.S.C. § 1983 – denial of procedural due process, liberty interest)

41. Woodley incorporates the foregoing paragraphs as though set forth here in full.

42. The City and Does 1 through 9 did not require personal references as part of the PCEF RFP.

43. Subsequently, City and Does 1 through 9 decided to require personal references. They gave Woodley four days to list references for projects some of which were over a decade old. Woodley did her best to provide the requested information, including by sending PCEF an email from one of her direct reports confirming Woodley's role in a particular project.

44. Through the 10:00 p.m. Letter, PCEF gave Woodley approximately 40 hours to respond to follow-up questions. These questions revealed that PCEF either did not understand, or chose to disregard, the names and other information Woodley had provided. For example, Woodley did not recognize several of the names PCEF listed. City also inquired into Woodley's criminal history.

45. Woodley responded to all aspects of the 10:00 p.m. Letter and invited PCEF to contact her with any additional questions. PCEF did not inquire further.

46. Rather than provide Woodley a meaningful opportunity to explain herself and clear her name, PCEF immediately revoked its endorsement of DE's proposal and issued a public statement indicating that Woodley had been dishonest and unable to substantiate her references. *See* Exhibit 4. In reality, she had been provided essentially no time to respond, and was deprived a meaningful ability to clear her name. Indeed, PCEF essentially acknowledged

this by amending its procedures to provide a period of not less than six business days for applicants to respond to PSEC's requests for additional information. (PCEF twice provided Woodley approximately two business days to respond to PCEF's requests.)

47.     Woodley is unaware of any legitimate justification for the tight timeline PCEF provided. Woodley thus believes, and on such belief alleges, that PCEF's timeline was motivated by public relations concerns, or a desire to award the contract to Earth Advantage as originally planned, rather than an interest in determining the truth and providing Woodley a meaningful chance to clear her name.

48.     PCEF's very public revocation of its endorsement, which included at least one public statement, coupled with PCEF's recommendation to revoke the grant and the City Council's vote revoking the award, has destroyed Woodley's ability to make a living through her work with Diversifying Energy specifically, and in the public contracting and energy spaces more generally.

49.     Although the *Oregonian* article initially reported (only somewhat accurately) on Woodley's past, the City's statements and actions effectively ratified the *Oregonian's* reporting and gave the public impression that the City had investigated the *Oregonian* reporter's claims. In fact, and as public records indicate, the City simply relied on the reporter's research—in one email describing him as a "gentleman and a scholar," and, in a separate draft email to a *Portland Mercury* reporter, explaining that "it's not that they [the City] confirmed or didn't confirm the Oregonian's findings."

50.     The City thus has stigmatized Woodley without a meaningful opportunity to clear her name and, through its official act of effectively ratifying the *Oregonian* report, deprived her of earning a living through her chosen profession, as multiple organizations have ceased doing business with both Diversifying Energy—through which Woodley would have earned a salary on a project-by-project basis—and Woodley personally, who was set to engage in several consulting projects. The City thus has deprived Woodley of a liberty interest without due process.

51.     As a result of the City's violation of her due process rights, Woodley has suffered,

and will suffer, lost income in an amount according to proof but estimated to be not less than $600,000—the amount of salary Woodley anticipates she would have earned through Diversifying Energy and other endeavors for the next several years until retirement.

## PRAYER FOR RELIEF

WHEREFORE, Linda Woodley prays for relief as follows:

A.   Economic damages in an amount according to proof but not less than $600,000;

B.   Reasonable attorney fees and expert fees pursuant to 42 U.S.C. § 1988;

C.   Costs;

D.   Prejudgment interest; and

E.   Such other and further relief as may be just and necessary.

## JURY DEMAND

Plaintiff hereby demands a jury on all issues so triable.

DATED this 18th day of July, 2022.

SNELL & WILMER L.L.P.

*s/ Clifford S. Davidson*
Clifford S. Davidson, OSB No. 125378
Lea K. Schneider, OSB No. 145154
Attorneys for Plaintiff Linda Woodley

4854-6675-0502