# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **LINDA WOODLEY**, | Case No. 3:22-cv-423-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CITY OF PORTLAND**, | |
| Defendant. | |

Clifford S. Davidson and Lea K. Schneider, Snell & Wilmer llp, 1455 SW Broadway, Suite 1750, Portland, OR 97201. Of Attorneys for Plaintiff.

Elizabeth C. Woodard, Deputy City Attorney, Portland City Attorney's Office, 1221 SW Fourth Avenue, Room 430, Portland, OR 97204. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Linda Woodley (Woodley) brings this action against Defendant City of Portland (City), asserting a claim under 42 U.S.C. § 1983. Woodley alleges that the City has deprived her of procedural due process in violation of the Fourteenth Amendment. Before the Court is the City's motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court grants the City's motion.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual

allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

## BACKGROUND[1]

Woodley has worked in the fields of energy, diversity, and equity and inclusion throughout her adult life. First Am. Compl., ¶ 5 (ECF 12). In July 2020, Woodley founded an entity known as "Diversifying Energy" (DE) and currently serves as its Executive Director. *Id.* Through DE, Woodley continues her work to support vulnerable low-income communities and communities of color. *Id.* Woodley resides in Clackamas County and is an Oregon citizen. *Id.*

On November 6, 2018, Portland voters adopted the Portland Clean Energy Benefits Initiative, creating a clean energy surcharge to fund clean energy projects and job training. *Id.*, ¶ 7. In February 2019, the City created the Portland Clean Energy Community Benefits Fund (PCEF) to implement the initiative. *Id.*, ¶ 8. The City authorized the Bureau of Planning and Sustainability (BPS) to administer PCEF. *Id.*, ¶ 6. The initiative was expected to bring in millions of dollars in new annual revenue to help disadvantaged groups address the climate crisis. *Id.* ¶ 9. PCEF is the nation's first climate fund created and led by persons of color. *Id.*

In September 2021, Woodley learned that PCEF planned to award a grant to a nonprofit entity to become an Equipment Purchasing Partner (EPP) and receive an EPP grant. *Id.*, ¶ 10. The grant would allow the EPP to distribute cooling equipment to low-income Portlanders. *Id.* On behalf of DE, Woodley contacted PCEF for information about applying for the EPP grant. *Id.*, ¶ 11. Woodley believed PCEF planned to award the EPP grant to an entity known as "Earth Advantage," without a competitive process. *Id.* After Woodley contacted the City, the City was required to use a competitive process. *Id.*, ¶ 12.

---

[1] The Court takes these facts from Plaintiff's First Amended Complaint, documents attached to Plaintiff's First Amended Complaint, and documents attached to Defendant's motion to dismiss, of which the Court takes judicial notice because they are incorporated by reference in Plaintiff's First Amended Complaint. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

On October 13, 2021, PCEF issued a Request for Proposal (RFP), and Woodley, on behalf of DE, timely responded before the deadline of October 27, 2021. *Id.*, ¶¶ 12-13, 16. On November 5, 2021, Woodley submitted a revised response to the RFP, including changes in the submitted budget, information about Woodley's experience, and information about five key team members. *Id.* ¶ 18. On November 10, 2021, the PCEF Committee recommended to the Portland City Council that DE receive the grant. *Id.*, ¶ 20. On December 1, 2021, the City Council issued Ordinance 190618 authorizing the BPS Director to sign a grant agreement with DE. *Id.*, ¶ 21; ECF 14-1. No grant agreement, however, was ever executed with DE.

Plaintiff contends that sometime in early December 2021, a reporter with *The Oregonian* contacted City personnel as part of an article it was researching. First Am. Compl., ¶ 22. On December 9, 2021, PCEF contacted Woodley requesting that she provide contact information for "lead staff member[s] that can speak to your performance" for three projects listed in DE's responses to the RFP. *Id.*, ¶ 23. The RFP itself had not asked for any references. *Id.*, ¶ 15. The PCEF asked that Woodley respond as soon as possible to this request. *Id.* ¶ 23. Between December 10 and 14, 2021, PCEF requested that Woodley provide additional references and appeared confused, mixing up names, despite Woodley's allegedly prompt and accurate responses. *Id.*, ¶¶ 24-34. Woodley alleges that several times PCEF made mistakes regarding the reference contacts provided by Woodley. *Id.*, ¶¶ 31, 34-36.

On December 12, 2021, *The Oregonian* published an article about Woodley titled "*Portland awarded $12M clean energy contract to executive with long history of financial misdeeds, unpaid taxes*." ECF 14-5. Woodley alleges that the article was "only somewhat accurate" and that the City's eventual actions "ratified" this article to Plaintiff's detriment, allowing a decades-old crime unfairly and needlessly to punish a businesswomen of color and

preclude her from a program designed for communities of color and to help communities of color. First Am. Compl., Intro, ¶¶ 49-50.

Meanwhile, despite Woodley pointing out on December 14th that PCEF had been contacting incorrect people and Woodley responding on December 16th to PCEF's questions, on December 17th PCEF announced without providing Woodley further notice or opportunity to respond that it was withdrawing its recommendation to the City Council that DE receive the grant. *Id.*, ¶¶ 33-36. That same day, the City, through Commissioner Carmen Rubio, issued a public statement stating that she had directed staff independently to verify the information in *The Oregonian* article, noting that Woodley had been giving an opportunity to respond but that there were "concerning inconsistencies that call into question" DE's ability to perform under the grant, and disclosing the decision to award Earth Advantage the PCEF Heat-Response grant instead of DE. *Id.*, ¶ 37; First Am. Compl. Ex. 4 at 1 (ECF 12-1 at 11). On December 30, 2021, before the City Council hearing, Woodley submitted written testimony addressing alleged mischaracterizations contained in *The Oregonian* article, describing PCEF mismanagement of her many responses to their requests, and providing further information about her background. *Id.*, ¶ 38. The City Council held a meeting on January 5, 2022, at which Plaintiff was given approximately four minutes to speak. During that meeting, the Council formally revoked the grant from DE and awarded it to Earth Advantage. *Id.*, ¶ 38.

After Commissioner Rubio's public statement and the City's revocation of DE's grant, several organizations ended their business relationships with DE and Woodley. *Id.*, ¶ 50. Before the City rescinded the EPP grant, Woodley had been set to "engage in several consulting projects." *Id.* Before the EPP grant, DE had received other grants from the City. *Id.*, ¶ 39. In one of those earlier grants, the City awarded DE $198,000 to work on Portland Public School

facilities. *Id*. After PCEF's investigation of Woodley, the City has changed how it deals with DE and no longer makes advance payments as called for in the earlier grant agreement. *Id.* It now only reimburses DE.

## DISCUSSION

In her First Amended Complaint, Woodley alleges only a single claim that the City has violated her rights to procedural due process. Thus, there is no need for the Court to address the City's arguments relating to Woodley's claims for defamation and false light raised in her original complaint but no longer presented in her First Amended Complaint. Regarding Woodley's due process claim, the City alternatively argues that Woodley fails to state a claim because (1) Woodley's alleged harm was caused by *The Oregonian* and not by the City; (2) Woodley fails to allege the "plus" conduct of the requisite "stigma plus" needed to state a due process claim predicated upon defamation; and (3) the City provided sufficient due process.

### 1.   "Stigma Plus" Standards

The Fourteenth Amendment protects against the deprivation of liberty, which "encompasses the right of persons 'to engage in any of the common occupations of life.'" *Hyland v. Wonder*, 972 F.2d 1129, 1141 (9th Cir. 1992) (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 572 (1972)); *see also Bollow v. Fed. Rsrv. Bank of San Francisco*, 650 F.2d 1093, 1100 (9th Cir. 1981) ("The liberty protected by the due process clause of the fifth and fourteenth amendments encompasses an individual's freedom to work and earn a living."). Defamation by a state actor does not amount to a deprivation of "liberty" within the meaning of the Fourteenth Amendment unless it causes injury to some interest other than mere loss of reputation. *See Paul v. Davis*, 424 U.S. 693, 711 (1976). Accordingly, to allege a claim under 42 U.S.C. § 1983 predicated upon an act of defamation, a plaintiff must allege what is often referred to as a "stigma-plus" claim: "a stigmatizing statement" plus a deprivation of a

"tangible interest" without due process of law. *Ulrich v. City & Cnty. of San Francisco*, 308
F.3d 968, 982 (9th Cir. 2002). To states a "stigma-plus" claim, a plaintiff must allege two
elements: (1) "the public disclosure of a stigmatizing statement by the government, the accuracy
of which is contested, and (2) the denial of some more tangible interest such as employment or
the alteration of a right or status recognized by state law." *Id.* (quotation marks omitted). "Where
these elements exist, the plaintiff is 'entitled to notice and a hearing to clear his name.'" *Id.*
(quoting *Bollow*, 650 F.2d at 1100).

"If . . . the government takes steps or makes charges that so severely stigmatize [a
plaintiff] that she cannot avail herself of other employment opportunities, a claim for deprivation
of liberty will stand." *Hyland*, 972 F.2d at 1141 (discussing a plaintiff in the employment
context). "To implicate constitutional liberty interests, however, the [conduct] must be
sufficiently serious to 'stigmatize' or otherwise burden the individual so that [s]he is not able to
take advantage of other employment opportunities." *Bollow*, 650 F.2d at 1101 (discussing liberty
interest in the context of discharging an employee). In the absence of both allegations, a plaintiff
merely has a potential common law claim of defamation, not a constitutional claim.

   **2.  Analysis**

Woodley alleges that the City's conduct in making a false public statement and
withdrawing the grant served to ratify the inaccurate *The Oregonian* article and destroy
Woodley's ability to engage in her "chosen profession." First. Am. Compl. ¶ 50. The City
responds that Woodley's allegation that DE continues to operate under a grant from the City
forecloses Woodley's argument that she plausibly has alleged the necessary liberty interest
because she is not completely barred from pursuing her chosen profession. In other words, the
City argues that Woodley fails plausibly to allege that she is not able to take advantage of other
professional opportunities because she alleges that she is currently engaging in relevant

professional opportunities. The City also argues that Woodley fails to allege facts plausibly

showing that it was conduct by the City, and not *The Oregonian*, that caused Woodley

reputational harm, and that regardless of any harm-producing conduct or requisite liberty interest

alleged by Woodley, the City provided sufficient process by allowing Woodley to be heard at the

City Council meeting held on January 5, 2022.

Woodley responds that the City publicly "indicat[ed]" that Woodley had been

"dishonest." *Id.*, ¶ 46. Woodley argues that the label of dishonesty and the City's action of

revoking the grant preclude Woodley from working in the public contracting and energy sectors.

The problem with this argument is that Woodley alleges in her amended complaint that DE (and

thus Woodley) continues to work with the City through the Portland Public Schools public grant.

The City has not revoked that grant. Thus, accepting Woodley's well-pleaded allegations as true,

she is still working in her chosen field, albeit in a reduced capacity.

Woodley also alleges that "multiple organizations" ceased doing business with DE and

that she lost "several consulting projects" after the alleged conduct by the City. *Id.*, ¶ 50. She

does not allege, however, that the City cancelled its ongoing $198,000 grant to DE relating to

Portland Public Schools. Nor does she allege that the City has foreclosed DE or Woodley's from

applying for future grants. She also does not allege that all other business organizations ceased

doing business with her and DE. She merely alleges in a conclusory fashion that she is

foreclosed from practicing her chosen profession. *See id.*, Intro; ¶ 50. The Court need not accept

as true a conclusory allegation of an element of a claim. *See Starr*, 652 F.3d at 1216.

To implicate a constitutional liberty interest, "the government's stigmatizing statements

[must] effectively exclude the employee *completely* from her chosen profession." *Blantz v. Cal.*

*Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 925 (9th Cir. 2013)

(emphasis added). "Stigmatizing statements that merely cause 'reduced economic returns and diminished prestige, but not permanent exclusion from, or protracted interruption of, gainful employment within the trade or profession' do not constitute deprivation of liberty." *Id. (*quoting *Stretten v. Wadsworth Veterans Hosp.*, 537 F.2d 361, 366 (9th Cir. 1976)). "Thus, stigmatizing statements do not deprive a worker of liberty unless they effectively bar her from *all* employment in her field." *Id.* (emphasis in original).

DE and Woodley are currently engaged in work in Woodley's chosen profession, at least with the City. Thus, Plaintiff's allegations fail plausibly to state a claim that she is barred completely from her chosen profession. As noted, Woodley may have a common law defamation claim against the City, but she has not adequately alleged a constitutional violation. If, however, Woodley believes that she can meet the demanding standard stated in *Blantz*, which requires allegations of facts showing that a plaintiff is completely foreclosed from the plaintiff's chosen profession, meaning from *all* employment in the relevant field, Woodley may file a Second Amended Complaint within 14 days from the date of this Opinion and Order. Finally, because Woodley fails to allege an actionable liberty interest, the Court declines to reach the City's remaining alternative arguments.

## CONCLUSION

The Court GRANTS Defendant's Motion to Dismiss, ECF 13.

**IT IS SO ORDERED**.

DATED this 14th day of November, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge